## LILLIBRIDGE vs. ROSS.

A. R., by his last will, amongst other bequests, gave all the rest of his property to his wife, E. R., for and during her natural life, and after her death to descend to the heirs of her body, to hold to the said heirs of her body, *share and share alike, and to their heirs and assigns forever*; but if his wife should *die without issue*, then the said property to be rented and hired to the best advantage; and out of the first rents received, he gave five hundred dollars to his brother's widow, the sister of his wife; and the remainder, when collected, to be appropriated and applied towards the maintenance and support of two of his brother's children (naming them), while they are under age and unmarried; but as soon as the last of said children shall become of age, or marry, the testator directed that all his property descend to all his said two brothers' children, who may then be alive, to be equally divided between them, share and share alike; to hold to them, respectively, their heirs and assigns forever. He nominated his wife executrix, and his dear and trusty friend, J. T. R., executor of his will, giving and granting to them "all my full power and authority to execute the same, according to the true intent and meaning thereof." *Held,* 1. That E. R., the wife of testator, took an estate for life only, and that her heirs, had she left any, would have taken as purchasers. 2. That the limitation over was good, not being upon an indefinite failure of issue of E. R., but of heirs, at the time of her death.

3. That the limitation over was not obnoxious to the rule against perpetuities.

In Equity, in Chatham Superior Court. Decision on demurrer, made by Judge FLEMING, in vacation.

On the first day of April, 1859, David Ross, James Ross, Elijah Ross, Abner S. Ross, Anne Taylor, formerly Anne Ross, by her next friend, Elias Taylor; Caroline Sayres, formerly Caroline Ross, by her next friend, Elias Sayres; Elizabeth Hopkins, formerly Elizabeth Ross, by her next friend, James I. Hopkins, filed their bill in equity, returnable to the May term, in said year, of the Superior Court of Chatham county, against Oliver M. Lillibridge, executor of the last will and testament of Elizabeth Ross, alleging that their uncle, Abner Ross, departed this life on or about the day of            , in the year eighteen hundred and twenty, having first made and executed a last will and testament, of which the following is a copy:

STATE OF GEORGIA: I, Abner Ross, being of sound health, memory and understanding, do make, publish and declare

this my last will and testament, as touching such worldly prop-
erty as it has pleased God to bless me with, or which I shall
die seized and possessed of, after paying all my just debts
and funeral expenses. I give, devise and bequeath the
same, in manner following, that is to say: My estate, both real
and personal, consisting of one equal half, or moiety, of an im-
proved lot on the bay, in the city of Savannah, whereon I
lately resided with O. Martin Lillibridge, known by the num-
ber five, in Franklin Ward, and the half of one unimproved
lot, number four, in New Franklin Ward, and also the one-
half, or moiety of a half lot of land, improved, near the Mar-
ket Square, in          ⟍          Ward, known by the number six,
and which was jointly purchased and now equally owned
by O. Martin Lillibridge and myself, from Henry William
Oakman; one-half, or moiety of a plantation, or tract of land
in Effingham county, on the Louisville road, containing two
hundred and sixty-two acres, with the improvements and live
stock thereon; and also the one-half of a colored slave
negro woman, and of a negro boy named Jack, together
with all the rights and credits, books of accounts, bonds, notes
that is belonging to the firm of Lillibridge & Ross, and
generally all other articles not herein enumerated, to me be-
longing, and in anywise appertaining, that I shall die seized
and possessed of, whensover and wheresoever to be found, I
give unto my dearly and well-beloved wife, Elizabeth Ross,
for and during her natural life, and after her death to descend
to the heirs of her body, to hold to the said heirs of her body,
share and share alike, and to their heirs and assigns forever.
But if it should please God that my said wife should die with-
out issue, then it is my will that my said real and personal
estate be hired or rented out, to the best advantage; and
out of the first rents received, that five hundred dollars be
given to my brother's widow, who is my wife's sister,
namely, Latishia Ross, of Savannah, in token of my sincere
regard for her, to hold to her forever; and the remainder of
the rents, when collected to be appropriated and applied to-
wards the maintenance and support of my brothers' (Eli-
jah Ross and Ezekiel Ross) children, while they are under
age and unmarried; but as soon as the last of such children
shall become of age, or married, it is my will, and I do hereby
order, that all my said property, real and personal, of what
nature or kind soever, shall descend to all and every of such

of my said brothers' children as may be then alive, to be equally divided amongst them, share and share alike, to hold to them severally and respectively, and to their heirs and assigns forever. And lastly, I do hereby nominate, constitute and appoint my dear and loving wife, Elizabeth Ross, to be executrix, and my dear and trusty friend, James T. Ross, to be my executor of this my last will, hereby giving and granting, to my said executrix and executor, all my full power and lawful authority to execute this my will according to the true intent and meaning thereof. In witness whereof, I, the said testator, hath and doth hereunto set my hand and seal, at Savannah, the 25th day of May, in the year 1815..          ABNER ROSS. [L. S.]

That the said Elizabeth Ross has departed this life, leaving a last will and testament, by which said will Oliver M. Lillibridge is constituted the executor, and that, as such executor, he has in his possession and control the property which was devised and bequeathed in the will of the said Abner. That Ezekiel Ross, one of the brothers of the said Abner, in said will mentioned, is dead, leaving no issue; that the complainants are the only children of Elijah Ross, the other brother, who has also departed this life, and as such they pray an account of the said estate of the said Abner, from the said Oliver M., alleging that the said Elizabeth had but a life-estate therein, and that they, the complainants, are entitled to the remainder.

To which said bill in equity, the said defendant, by his solicitor, at the return term thereof, filed a general demurrer, and an order was taken that the said demurrer be argued in vacation, and thereupon, after argument had, the judge of the said Superior Court of Chatham county rendered a decision, overruling the demurrer, and ordering the defendant to answer the bill.

This decision is the error assigned in the record.

LLOYD & OWENS, for the plaintiff in error.

WARD, JACKSON & JONES, for the defendants in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

Considering the time that has been consumed in Courts in discussing questions like those involved in this record, brevity, it would seem, is the greatest merit that an opinion could claim, which is written upon them.

After the decision by this Court in *Jackson vs. Adams,* 14 *Geo. Rep.* 557, and numerous parallel cases, before and since, I should esteem it a work of supererogation to · undertake to show that, by the will of Abner Ross, Elizabeth Ross, his wife, took an estate for life only in his property, real and personal, and that after, and at the time of her death, it went to her heirs-at-law, or distributees.

There are but two questions in this record open to examination. After the above bequest, the testator provides, "But if it should please God that my wife should *die without issue,* then it is my will that my said real and personal estate be hired or rented out to the best advantage, and out of the first rent received that five hundred dollars be given to my brother's widow, who is my wife's sister, namely, Latishia Ross, of Savannah, in token of my sincere regard for her, to hold to her forever; and the remainder of the rents, when collected, to be appropriated and applied towards the maintenance and support of my brothers' (Elijah Ross and Ezekiel Ross) children, while they are under age and unmarried; but as soon as the last of such children shall become of age, or marry, it is my will, and I do hereby order that all my said property, real and personal, of what nature or kind soever, shall descend to all and every of such of my said brother's children as may be then alive, to be equally divided amongst them, share and share alike, to hold to them severally and respectively, and to their heirs and assigns forever. And lastly, I do hereby nominate, constitute and appoint my dear and loving wife, Elizabeth Ross, to be executrix, and my dear and trusty friend, James T. Ross, to be my executor of this my last will and testament, hereby giving and granting, to my said executrix and executor, all my full power and lawful authority to execute this my will, according to the true intent and meaning thereof. In witness whereof," etc.

Do the words *"die without issue"* mean, in this will, an indefinite failure of issue? We concede frankly that counsel for the plaintiff in error has cited strong and direct authority, that they do. These adjudications are to this effect: that it was the general intent of the testator, Ross, by the

use of the technical words "descend to the heirs of the body of Elizabeth Ross," to create an estate-tail; that admitting the superadded words, "share and share alike, and to their heirs and assigns forever," etc., so far controlled the technical words "heirs of her body," as to make them words of purchase, and not of limitation; yet that inasmuch as the limitation over is upon an indefinite failure of issue, "die without issue," it shows that the testator, abandoning his particular intent, returned to his general intent; and consequently the will stands as though it bequeathed the property to his wife, for life, and, after her death, to the heirs of her body.

We will state succinctly our reasons for dissenting from this doctrine. No such precedent is produced prior to May, 1776. All the reported cases read (and from the known ability and research of counsel, we are warranted in concluding that none older could be found), are subsequent to the period of the Revolution. It is well known that, down to Lord Mansfield's day, and during his administration, a more liberal construction had obtained, culminating in the leading case of *Doe ex dem. Long vs. Lanning, 2 Burrow,* 1100, which criticised and perhaps overruled as it has been since in England, was law at the time our adopting statute took effect, and has always been followed and approved in this State as such. Lately, the English Courts had adopted a more stringent rule, until the parliament of Great Britain has been compelled to interfere (as the Legislature in Georgia has likewise done), thereby releasing the subjects of that Kingdom, as well as the people of this State, from all the subtleties and refinements of legal and judicial pedantry upon this subject. Are we constrained, then, to incorporate this comparatively modern doctrine into our system, as a rule of property? We think not.

Again, with the most profound reverence for Lord Kenyon and of Lord Eldon, we must say, that, to our humble apprehension, their reasoning is fallacious, and was neither more nor less than evincive of a predetermination to sustain a particular policy—subversive, though it might be, of the intention of testators.

If the whole clause in the will, including the superadded words, created an estate for life in Elizabeth Ross, with remainder in fee to her heirs, how, I would ask, is it assumed,

that, by the use of a part of the words in that clause, to wit: "heirs of the body," it was the primary general intent to create an estate-tail? Is it admissible to divide a clause, instead of taking the whole together, to justify such a .conclusion? We think not.

Again, it is contended that "to die without issue," in the limitation over, means an indefinite failure of the progeny of Mrs. Ross, notwithstanding they took as purchasers. How-could the testator be supposed to contemplate such a contingency, when each one of these heirs, taking, as he did, a fee to his distributive share, became the root or *propositus* of a new inheritance? He acquired the unlimited power of disposing of his share, by deed or will, or any other way he saw fit. And yet, after aliening the property, and its getting scattered to the four quarters of the globe, if, at some distant period, the entire progeny should fail, Mr. Ross undertakes to devise this property over!

What would be the proper view of such a clause? Why, that the testator intended, by the words *"issue"* in the limitation clause the same class of persons designated in the first; that is to say, in this will, children and grandchildren, heirs or distributees of his wife. This harmonizes his intent. The other construction mars and defeats it. Had he used the word *issue* in the first clause, giving the estate to Mrs. Ross for life, and after her death to her *issue,* share and share alike, etc., and then proceeded as he did; and if she die without *issue,* etc., all would have been impressed with the identity of meaning. Using the words "heirs of the body," and "issue," does not lead to any different conclusion as to intention.

Having been cheered by our statute by a glimpse at fairy land, let us not unbidden plunge again amidst the disheartening gloom of *Preston on Estates, Fearne on Remainders,* to say nothing of *Coke, Plowden,* and the *Year Books.* Technical rules are binding in questions of property, and we can not supersede them. But following, in this case, the irresistible impulse of our judgment, and sustained, as we think, by common sense, let us not be tempted to plume our wings for another flight to the clouds, in search of occult lore, for grounds to say, what we know was the will of Abner Ross shall not be his will.

The other question in this case, is this: Is this limitation

over too remote? It does not appear but that one of the brothers of the testator had children, at his death. It is altogether probable that there were children born before the death of his wife, who lived to extreme old age, and it is the remaindermen who have filed this bill. In *Stephens vs. Stephens, cases Temp. Talbot, 2287*, decided in 1736, it was held that a devise to such unborn son of a *femme covert,* as should first attain the age of twenty-one years, was held to be good. Since that time, an executory devise, to this extent, has been uniformly upheld, and is received as a part of the system of our American Testamentary Jurisprudence.

And in this case, the testator expressly clothed his executrix and executor "with all his power and lawful authority, to execute his will according to the true intent and meaning thereof." In other words, he constituted them trustees for this purpose. After the termination of the life estate, five hundred dollars is to be raised out of the rents, issues and profits, for his wife's sister, the remainder, when collected, to be appropriated and applied towards the maintenance and support of his brothers' children, while they are under age and unmarried; but as soon as the youngest of his nephews and nieces becomes of age or marries, the whole to go to all of Elijah and Ezekiel Ross' children, as may be then alive, to be equally divided amongst them, share and share alike, to hold to them, severally and respectively, and to their heirs and assigns forever: the very same disposition which he intended to be made amongst the heirs of his wife—to whom he was evidently tenderly attached—had she been blessed with any by any future husband.

If this be even a contingent remainder, or executory remainder, and no child or children had been born to his brothers, at the death of the life-tenant, still it would have been held by the testamentary trustees, to wait the possibility of such an event. But this supposition does not comport with the facts of the case. Neither is this the proper construction to put upon this bequest. I only state the case most strongly for the defendants.

Our conclusion, therefore, is, that the limitation over does not create a perpetuity. Whether this point was made in the Court below, does not appear. It is not noticed in the decision upon the demurrer, and but slightly argued in this Court.

The judgment of the Circuit Court, overruling the decision, and ordering the defendants to answer the bill, is affirmed.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.